UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORA DENIECE LIVINGSTON,<br>Plaintiff,<br>v.<br>MCKESSON MEDICAL-SURGICAL INC.,<br>Defendant. | Case No. 2:26-cv-1833-JDP<br><br>ORDER |

Plaintiff Ora Deniece Livingston filed this action in Placer Superior Court, alleging that defendant McKesson Medical-Surgical Inc. terminated her employment after she requested an accommodation. Defendant timely removed on the basis of diversity jurisdiction. Plaintiff now moves to remand, arguing that the amount in controversy does not exceed the jurisdictional threshold. For the reasons stated below, plaintiff's motion is denied.

**Background**

Beginning in 2020, plaintiff was a full-time employee for defendant, a pharmaceutical distribution company. ECF No. 1-1 ¶¶ 4, 16. During her employment, plaintiff suffered from severe asthma that required the intermittent use of a nebulizer machine at work; defendant approved this accommodation and allowed plaintiff to use the machine as needed. *Id.* ¶¶ 18-19. In November 2024, plaintiff's medical provider "prescribed her to undergo injections once per month to lessen the severity of her asthma attacks" and stated that plaintiff "should not engage in

any activity for 24 hours following the injections." *Id.* ¶ 20. Plaintiff informed defendant that "she would schedule these injections once a month on Fridays, so that she could recuperate on the weekends and only miss one day of work." *Id.* ¶ 21. In January 2025, the day before plaintiff was scheduled to begin her injections, defendant terminated her employment "under the pretext of violating company policy." *Id.* ¶ 24.

**Procedural History**

In March 2026, plaintiff filed suit in Placer Superior Court.[1] ECF No. 1-1 at 5. The complaint brings eight claims based in state law, including disability discrimination, retaliation, failure to accommodate, and failure to engage in the interactive process. *Id.* ¶¶ 33-111. Plaintiff seeks compensatory damages, emotional distress damages, punitive damages, and attorney's fees. *Id.* at 24. While plaintiff did not specify an exact demand, she stated that the state action was unlimited such that the amount demanded exceeds $35,000. *Id.* at 5, 27.

In May 2026, defendant timely removed on the basis of diversity jurisdiction. ECF No. 1. Defendant provided that it is a citizen of Virgina and that plaintiff is a citizen of California. *Id.* at 3-4. Defendant also asserted that the amount in controversy exceeds $75,000. *Id.* at 4-7.

On June 15, 2026, plaintiff filed a motion to remand on the basis that the amount in controversy does not exceed $75,000. ECF No. 14. Defendant has filed an opposition, ECF No. 15, and plaintiff has filed a reply, ECF No. 16.

**Legal Standard**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district . . . where such action is pending." 28 U.S.C. § 1441(a). Courts construe the removal statute against removal, and the party seeking removal bears the burden of establishing federal jurisdiction. *Geographic Expeditions, Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)). If removal was improper, "the district court lack[s] subject matter jurisdiction,

---

[1] The parties have consented to magistrate judge jurisdiction. ECF No. 13.

and the action should [be] remanded to the state court." *Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998) (citing 28 U.S.C. § 1447(c)).

The notice of removal must contain "a short and plain statement of the grounds for removal," which includes the claimed jurisdictional basis. 28 U.S.C. § 1446(a). Diversity jurisdiction exists in all civil actions in which there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. In calculating the amount in controversy, the proponent of federal jurisdiction has the burden of proving by a preponderance of the evidence that the amount in controversy is satisfied. *Geographic Expeditions, Inc*., 599 F.3d at 1106-07.

Where, as here, the motion to remand "raises a factual challenge by contesting the truth of the remover's factual allegations, . . . the remover must support her jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context." *DeFiore v. SOC LLC*, 85 F.4th 546, 552-53 (9th Cir. 2023) (cleaned up)

**Analysis**

The parties dispute whether the amount in controversy exceeds $75,000.[2] The amount in controversy is the "amount at stake in the underlying litigation" and "includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (cleaned up); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (holding that "the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover") (emphasis in original).

Plaintiff seeks compensatory damages, emotional distress damages, punitive damages pursuant to California Civil Code § 3294, and attorney's fees pursuant to California's Fair Employment and Housing Act. The court addresses each in turn.

[2] The parties agree that there is complete diversity of citizenship. *See* ECF No. 1 at 3-4; ECF No. 14 at 7 n.1.

**I. Compensatory Damages**

Plaintiff seeks "lost wages, earnings, commissions, retirement benefits, and other employee benefits, and all other sums of money, together with interest on these amounts." ECF No. 1-1 at 24. The Court of Appeals has held:

> If a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are "at stake" in the litigation, whatever the likelihood that she will actually recover them. In such a situation, although the plaintiff's employer would have paid the wages in the future had she remained employed, they are *presently* in controversy.

*Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)

Relying on *Chavez*, courts in this Circuit have "considered back pay as the wages lost from the date of termination to the time of removal, and front pay as the wages lost from the date of removal until trial." *Olvera v. Quest Diagnostics*, No. 19-cv-6157-RGK-SK, 2019 WL 6492246, at *2 (C.D. Cal. Dec. 2, 2019). "If a trial date has not been set, courts in employment cases have found that a year from the date of removal is a conservative estimate for front pay." *Id*.

In the notice of removal, defendant provides evidence that during plaintiff's last full year of employment, she earned approximately $57,000. ECF No. 1 at 6 (citing ECF No. 1-2 at 2). Therefore, defendant asserts that "if Plaintiff were to recover back pay since her last day (January 2025) through the date of trial (assuming the case proceeds to trial in August 2027), she could receive a total of 134 weeks of last wages, or approximately $146,864." *Id*. (emphasis omitted).

In her motion, plaintiff argues that defendant cannot rely on speculative future events, such as a trial date, and that defendant has failed to account for mitigating circumstances. ECF No. 14 at 10-11. Specifically, plaintiff asserts that she "mitigated within 30 days of termination, with a position that earns $1.64 less than her position with Defendant. Thus, her loss of earnings would amount only to $3,870.00 for the first month and $4,434.00 for the totality of the 16 months since finding alternate employment."[3] *Id*. at 11.

---

[3] Plaintiff does not specify the period during which she "earns $1.64 less than her position with Defendant." *See* ECF No. 14 at 11. It appears that plaintiff is describing her hourly pay;

As defendant points out, plaintiff does not provide any evidence to support the assertion of mitigating circumstances, such as "wage records, offer letter, W-2s, or any other evidence regarding her current employment or rate of pay." *See* ECF No. 15 at 6. Indeed, plaintiff does not even address this argument in her reply. *See* ECF No. 16. Plaintiff has failed to submit any "summary-judgment-type evidence" in support of her asserted mitigating circumstances.[4] *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (holding that the court may consider "summary-judgment-type-evidence" in ruling on a motion to remand). Accordingly, the court disregards plaintiff's assertion.

Plaintiff alleges that her last day of employment was January 16, 2025. ECF No. 1-1 ¶ 24. This action was removed on May 15, 2026. ECF No. 1. Thus, based on an annual salary of $57,000, or $4,750 per month, plaintiff would have earned approximately $76,000 between her termination and removal. Further, using a conservative estimate of one year between removal and trial, plaintiff would be entitled to $57,000 of front pay should she prevail. *See Olvera*, 2019 WL 6492246, at *2 ("If a trial date has not been set, courts in employment cases have found that a year from the date of removal is a conservative estimate for front pay."). In sum, plaintiff could reasonably recover $133,000 in lost wages.[5]

## II. Emotional Distress Damages

Plaintiff seeks "general damages for mental pain and anguish and emotional distress and loss of earning capacity." ECF No. 1-1 at 24. Plaintiff alleges that, as a result of defendant's actions, she suffers "severe and profound pain and emotional distress, anxiety, depression, headaches, tension, and other physical ailments." *Id.* ¶ 29. The Court of Appeals has held that emotional distress damages are properly considered for purposes of calculating the amount in

---

defendant understands the motion as asserting that plaintiff's lost wages are $8,304 between January 2025 and June 2026, *see* ECF No. 15 at 6, and plaintiff does not dispute this interpretation, *see* ECF No. 16.

[4] The complaint contains no allegations regarding plaintiff's subsequent employment or rate of pay. *See generally* ECF No. 1-1 at 5-25.

[5] This amount alone is sufficient for establishing diversity jurisdiction. Nonetheless, the court considers other forms of recovery to show that, even if it were to account for plaintiff's unsupported assertion that she has mitigated her lost wages, the amount in controversy is still satisfied.

controversy. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). Courts in this Circuit have held that "a removing defendant may provide evidence in the form of jury verdicts from similar cases." *Guillen v. Kindred Healthcare Operating, Inc.*, No. 17-cv-2196-JAK-FEM, 2018 WL 1183354, at *5 (C.D. Cal. Mar. 7, 2018). When reviewing other cases, the court need not find that those actions are "perfectly analogous" to the matter at hand; rather, the other cases need only be "sufficiently similar to serve as benchmarks." *Owuor v. Wal-Mart Assocs., Inc.*, No. 21-cv-2232-KJM-JDP, 2022 WL 1658738, at *3 (E.D. Cal. May 25, 2022) (citing *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) ("The fact that the cited cases involve distinguishable facts is not dispositive.")).

In its opposition, defendant has cited at least one similar case to estimate an award for emotional distress damages.[6] ECF No. 15 at 8-9. In *Abarca*, the plaintiff started experiencing pain, and after seeing a medical provider, was issued a work restriction. *Abarca v. Citizens of Human., LLC*, No. B283154, 2019 WL 3451184, at *1 (Cal. Ct. App. July 31, 2019).[7] After the work restriction expired, the defendant terminated the plaintiff's employment. *Id*. As a result of his termination, the plaintiff experienced, *inter alia*, anxiety and depression. *Id*. at *2. The plaintiff sued the defendant for disability discrimination, retaliation, failure to accommodate, and failure to engage in the interactive process. *Id*. At trial, the jury awarded him $45,000 in "non-economic losses including mental suffering." *Id*. at *3.

In *Contreras-Velazquez*, the plaintiff experienced a work-related injury and, after seeing a medical provider, was issued work restrictions. *Contreras-Velazquez v. Fam. Health Centers of San Diego, Inc.*, 62 Cal. App. 5th 88, 94 (2021). The defendant asked the plaintiff to refrain from working. *Id*. Three months thereafter, the defendant terminated her employment. *Id*. at 95. The plaintiff sued the defendant for disability discrimination, failure to accommodate, and failure to

---

[6] Plaintiff suggests that defendant erred by not providing these citations in its notice of removal. *See* ECF No. 16 at 4. However, the court construes defendant's opposition as an amendment to its notice of removal. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002).

[7] Federal courts "may consider unpublished California Court of Appeal decisions in determining California law, even though such opinions are not precedent within the state system." *Casola v. Dexcom, Inc.*, 98 F.4th 947, 958 n.12 (9th Cir. 2024).

engage in the interactive process. *Id*. At trial, the jury awarded her $750,000 in "noneconomic damages for mental suffering, loss of enjoyment of life, inconvenience, grief, anxiety, humiliation, and emotional distress." *Id*. at 105.

Plaintiff does not address these cases, much less attempt to distinguish them. *See* ECF No. 16. For purposes of this motion, the court finds these actions sufficiently similar; indeed, they both involve an alleged wrongful termination after a request for a reasonable accommodation, and they involve the same causes of action. As such, a conservative estimate of $45,000 is appropriate for emotional distress damages that plaintiff could reasonably recover.

**III. Punitive Damages**

Plaintiff seeks punitive damages pursuant to California Civil Code § 3294. ECF No. 1-1 at 24. This provision authorizes punitive damages where there is sufficient evidence of "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). "When the punitive damages are unspecified, courts may look to jury verdicts in cases with analogous facts." *Woolsey v. State Farm Gen. Ins. Co.*, 672 F. Supp. 3d 1018, 1027 (C.D. Cal. 2023) (collecting cases).

In *Abarca*, the plaintiff was awarded $550,000 in punitive damages under section 3294. *Abarca*, 2019 WL 3451184, at *3, 8. In *Contreras-Velazquez*, the court imposed a punitive damages award of more than $1.8 million. 62 Cal. App. 5th at 98. These cases support the finding that plaintiff could reasonably recover more than the jurisdictional threshold of $75,000 in punitive damages.

**IV. Attorney's Fees**

Plaintiff seeks attorney's fees pursuant to California's Fair Employment and Housing Act ("FEHA"). ECF No. 1-1 at 24. In determining the amount in controversy, courts may account for attorney's fees where authorized by statute. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998). Plaintiff brings claims under FEHA, and California courts have held that, under FEHA, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *See Vines v. O'Reilly Auto Enters., LLC*, 74

Cal. App. 5th 174, 182 (2022) (cleaned up). Further, the Court of Appeals has held that because "the amount in controversy includes *all* relief to which the plaintiff is entitled if the action succeeds," the court's calculation must account for future attorney's fees. *Fritsch*, 899 F.3d at 795 (emphasis in original).

Defendant has cited a similar case to estimate attorney's fees. ECF No. 15 at 9-10. In *Bolanos*, the plaintiff suffered an injury and was released to work with restrictions. *Bolanos v. Priority Bus. Servs., Inc.*, No. B280139, 2018 WL 1224655, at *1 (Cal. Ct. App. Mar. 9, 2018). Shortly thereafter, the defendant informed the plaintiff that it could no longer accommodate him, and he was subsequently terminated. *Id.* The plaintiff brought causes of action for disability discrimination, retaliation, failure to accommodate, and failure to engage in the interactive process. *Id.* After the plaintiff prevailed at trial, the court awarded him $231,470.50 in attorney's fees. *Id.* at *6. Notably, the plaintiff was represented by the same firm and counsel (Ramin Younessi) representing plaintiff in this action. *See id.* at *1.

Further, defendant's counsel asserts that in an action from 2017 involving defendant and plaintiff's counsel, "Mr. Younessi requested over $500,000 in attorneys' fees based on an $800 hourly rate and two times multiplier." ECF No. 15 at 10 (citing ECF No. 15-1 at 2).

Plaintiff does not contest the application of these prior cases. Rather, plaintiff argues that "[a]ttorney's fee are inherently case-specific and depend on numerous factors." ECF No. 16 at 6. However, the Court of Appeals rejected this argument in holding that future attorney's fees are appropriately considered in the amount in controversy. *See Fritsch*, 899 F.3d at 795 (rejecting the argument that "future attorneys' fees should not be included in the amount in controversy because they are inherently speculative"). To be sure, plaintiff provides no argument or evidence to show that she could not reasonably recover attorney's fees.

Based on the evidence provided, plaintiff could reasonably recover more than the jurisdictional threshold of $75,000 in attorney's fees.

**Conclusion**

Based on all forms of recovery, defendant has shown by a preponderance of the evidence that "the *maximum* recovery . . . plaintiff could reasonably recover" exceeds $75,000. *See Arias*, 936 F.3d at 927 (emphasis in original).

Accordingly, it is hereby ORDERED that plaintiff's motion to remand, ECF No. 14, is DENIED.

IT IS SO ORDERED.

Dated: September 14, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE